**62 So.2d 284**

**SANDERS v. SANDERS et al.**

**No. 40485.**

Nov. 10, 1952.

Rehearing Denied Dec. 15, 1952.

Reid, Burch & Reid, Amite, for defendants-appellants.

Ponder & Ponder, Amite, for plaintiff-appellee.

HAWTHORNE, Justice.

The defendant Mrs. Mina C. Sanders has appealed from those portions of a judgment recognizing the plaintiff William C. Sanders and the defendants Edgar C. Sanders, Donald E. Sanders, Thomas J. Sanders, and Mrs. Ruth Sanders Campbell as the owners of certain town lots in Kentwood, Louisiana, and condemning her to pay the sum of $1398.19, representing the balance in a joint bank account in her name and the name of Miss Emily Sanders, deceased, which the lower court decreed to have been the property of the deceased.

This judgment had the effect of declaring null and void on the ground of fraud a deed in which the town lots were conveyed to defendant by Miss Emily Sanders. The vendor named in the deed died on July 25, 1947, leaving neither ascendants nor descendants but survived by one brother, William C. Sanders, the plaintiff, and the four children of a predeceased brother, Henry Sanders, issue of his marriage to defendant Mrs. Mina C. Sanders. The children of this predeceased brother were

joined with their mother as defendants in this suit which was instituted by the surviving brother.

The deed under attack, dated August 28, 1945, recites that for the sum of $100 cash Emily E. Sanders conveyed to Mrs. Mina C. Sanders a certain tract of land situated in the Town of Kentwood, Parish of Tangipahoa, State of Louisiana, consisting of Lot 24 and the east one-half of Lot 22 of Block 22 of that town. The deed is in the form of a notarial act of sale, reciting that it was executed and signed by the vendor and the vendee in the presence of Guy Dyson, notary public in and for the Parish of Tangipahoa, State of Louisiana, and in the presence of two witnesses, L. Miller and J. E. Lambert.

The plaintiff-appellee charges that the sale was made through the fraud of defendant-appellant Mrs. Mina C. Sanders, and that consequently the act of sale does not represent the agreement of her and Miss Emily Sanders. He alleges that Mrs. Mina C. Sanders entered into an agreement with the deceased, Miss Emily Sanders, in which Miss Sanders was to convey to her one-half of the property described above, or the back part thereof which consisted of a vacant lot, but that contrary to this agreement Mrs. Mina C. Sanders had the deed prepared by a notary so as to include all of the property, and that the deceased executed this deed in the belief that she was conveying only that part of the property covered by the agreement; that the appel-

lant was able to perpetrate this fraud due to the failing physical and mental condition of the vendor, Miss Emily Sanders.

The defendants argue that the plaintiff, as a collateral heir, is without right or authority to attack this deed on the ground of fraud, and they cite numerous cases which they contend support this argument. The cases cited are authority for the proposition that collateral heirs are without right to attack an act of the de cujus made in violation of Article 1497 of the LSA–Civil Code, which forbids one to donate all of his property, or to attack an act of sale on the ground that it was simulated or a donation in disguise. These cases, however, are not pertinent or controlling in this case where the attack is based on fraud perpetrated on one of the contracting parties.

■ Where there are no forced heirs, a sane person may dispose of all of his property in any way he may see fit in the absence of some special prohibition, for he may do as he pleases with that which he owns. Such a special prohibition was found to exist in the case of Succession of Dupre, 218 La. 907, 51 So.2d 317, where it was held that collateral heirs may attack the contract of one from whom they would inherit on the ground that it is a disguised disposition derogatory to public order and policy.

■ In the instant case plaintiff, a collateral heir, attacks the deed not on the ground that it was executed by the deceased

in fraud of his rights, but on the ground that there was a fraud perpetrated on the deceased vendor named therein by the one with whom she contracted, and this attack we think he had a right to make under Article 1881 of the LSA–Civil Code, which provides:

"Engagements made through error, violence, fraud or menace, are not absolutely null, but are voidable by the parties, who have contracted under the influence of such error, fraud, violence or menace, or by the representatives of such parties."

Plaintiff, a legal heir, is a representative of the deceased and under this article has the right to bring an action to avoid a contract made through fraud perpetrated on her. Under these circumstances the question presented is whether the alleged fraud has been proved.

In the jurisprudence of this court it has been said that the charge of fraud is a most serious one; that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced. Strauss v. Insurance Co. of North America, 157 La. 661, 662, 102 So. 861; Garnier v. Ætna Ins. Co. of Hartford, Conn., 181 La. 426, 159 So. 705; Mutual Life Ins. Co. of New York v. Rachal, 184 La. 430, 166 So. 129; Metcalf v. Monsour, 195 La. 570, 197 So. 235; Mente & Co., Inc., v. Roane Sugars Inc., 199 La.

686, 6 So.2d 731; American Guaranty Co. v. Sunset Realty & Planting Co., Inc., 208 La. 772, 23 So.2d 409. It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence. Angichiodo v. Cerami, D.C., 35 F.Supp. 359; Fort v. Metayer 10 Mart. (O.S.) 436; Charrotte v. Louisiana College, 1 La.App. 438; Woodward v. Barringer, La.App., 24 So.2d 200.

Miss Emily Sanders, the vendor in the deed, and the defendant, Mrs. Mina C. Sanders, lived together for over 30 years in the Town of Kentwood. Henry Sanders and other brothers and sisters of Miss Emily as well as the children of Henry and Mrs. Mina Sanders were also members of this household, but those brothers and sisters are now dead, and the children of Henry and Mrs. Mina Sanders have resided elsewhere for a number of years. Plaintiff William C. Sanders, a resident of California, was never a member of this household. For many years this family resided as one household in a dwelling on the property described in the deed which stood of record in the name of Miss Emily Sanders and which was conveyed by her in the deed under attack, and, after the others died or left, Mrs. Sanders and Miss Emily continued to live there together.

This deed was dated August 28, 1945, and about 13 months later Miss Emily San-.

ders was sent to the East Louisiana State Hospital in Jackson, Louisiana, where she died on July 25, 1947, at the age of about 80 years.

To establish the fraud alleged, plaintiff relies on a series of letters written to him by the defendant Mrs. Sanders. In one of these letters, dated 20 days before the date of the deed, defendant wrote the plaintiff that Miss Emily had consented to sell to her one-half of the lot on which they resided, and that she proposed to build a cement house thereon. Defendant admits the writing of these letters, and in explanation of the fact that the deed covered the entire property on which they resided states that after the letter was written she and the deceased came to an agreement that, if she, Mrs. Sanders, would make certain improvements in the dwelling in which they lived together, she, Miss Emily Sanders, would include in the deed all of the property. After the execution of the deed the cement block house was constructed on the back lot of the property, and certain improvements were made in the principal dwelling, including plumbing, wiring, installation of a butane system, etc.

According to statements in these letters, the vendor's memory had become very poor, and her physical condition was rapidly deteriorating. Plaintiff argues that defendant was able because of these circumstances to have her sign the deed conveying the whole of the property, including the house in which they resided, when she had in fact agreed to convey only the back portion thereof, which was a vacant lot.

The record shows that for many years these two old ladies, sisters-in-law, lived together, mutually caring for each other, each looking after the wants of the other, in sickness nursing the other. Several residents of the Town of Kentwood, who had known both of them for a great many years and who were their neighbors and friends, testified that on or about the date of the deed the deceased, Miss Emily, appeared to them to be perfectly normal, and that her condition at that time was about the same as it had been in the years past. The record shows that she was suffering from the infirmities of the aged, that her health was not good, and that her physical condition finally became such that it was necessary to confine her in the East Louisiana State Hospital in Jackson so that she could be provided with adequate nursing and medical attention. However, she was never interdicted.

The notary before whom the deed was executed, the mayor of Kentwood, testified that he prepared this deed at the request of the defendant Mrs. Sanders, and that the two elderly ladies signed it before him in the presence of the two witnesses named therein; that due to their age they were unable to climb the stairs to his office, that for this reason he took the deed to them while they were sitting in

a car in front of his office, and that they signed it there. He testified that he had known both of them for over 20 years, and that on the occasion of the execution of the deed the vendor, Miss Emily, seemed to him to be perfectly normal, that he at that time explained the contents of the deed to her and asked her whether that was the bargain, and that she stated that the consideration named therein was for the lot with the dwelling situated thereon. This witness said he did not remember whether he read the deed verbatim on this occasion, but that he explained its contents, and that Miss Emily told him that that was what she wanted.

█ From these facts we do not think that plaintiff has established or proved the fraud alleged, nor has he established it to our satisfaction by legal and convincing evidence. Under these circumstances the judgment of the lower court recognizing the plaintiff and the other defendants as the owners of the property must be reversed.

Plaintiff-appellee argues that the act of sale was not in notarial form, basing this argument on the fact that one of the witnesses to the deed testified that he signed it after its execution by the parties. It is doubtful that the facts support this contention, as the notary who prepared the deed and before whom it was executed testified that it was witnessed at the same time the parties executed it in his presence.

█ Appellee argues that the proof shows that the consideration named in the deed was not paid, and that the act was simulated and a donation in disguise which fell for want of form. Appellee as a collateral heir has no right to attack by parol evidence the deed on the ground that it was a simulated sale and in reality a donation in disguise. The binding effect of the written contracts of a deceased on his collateral heirs was passed upon by this court in the cases of Collins v. Pratt, 15 La.Ann. 42; Thielman v. Gahlman, 119 La. 350, 44 So. 123, and Succession of Block, 137 La. 302, 68 So. 618.

█ In the alternative appellee also attacked the deed for lesion beyond moiety. In argument, however, he stated that he had abandoned this plea. We think it was properly abandoned under the holding in the case of Wolfson v. Lisso's Succession, 207 La. 67, 20 So.2d 427, that all the heirs of the deceased vendor must join in a demand to set aside an act of sale for lesion beyond moiety. In the instant case plaintiff has not been joined by the nephews and the niece of the deceased, who on the contrary are opposing him in this suit.

The trial judge held that the balance in the joint account of the deceased and the defendant Mrs. Sanders was the property of the former, and, as the balance in this account had been withdrawn by the defendant shortly after Miss Emily's

death, he rendered judgment against this defendant for the entire amount.

The bank statement was offered in evidence showing that the money withdrawn was deposited in a savings account in the name of "Miss Emily Sanders or Mrs. H. E. Sanders". This statement begins with a balance of $1633.19 brought forward on May 6, 1946, and ends on July 26, 1947, with the withdrawal of the entire balance of $1398.19. According to the testimony, these two ladies kept a joint account after the death in 1941 of Henry Sanders, brother of Miss Emily and husband of the defendant Mrs. Mina Sanders, for the purpose of paying their household expenses. In one of the letters heretofore discussed, the defendant wrote the plaintiff that she had placed part of the proceeds of the sale of a piece of property belonging to Miss Emily in a joint account. Defendant testified that because the deceased broke her arm in 1944 she was thereafter unable to sign checks on the joint account, and that "I got permission to sign her checks and did the clerical work".

This is a brief summary of all the evidence which we can find in the record pertaining to the joint bank account, and from this evidence we are unable to say who made the deposits to the account, when they were made, from what sources the funds so deposited came, or who made the withdrawals, and therefore we cannot determine the respective interests in the bank account. Certainly there is no proof in the record that the balance in this fund was entirely the property of either Mrs. Mina Sanders or Miss Emily Sanders.

Article 494 of the LSA–Civil Code provides:

"It is of the essence of the right of ownership that it can not exist in two persons for the whole of the same thing; but they may be the owners of the same thing in common, and each for the part which he may have therein."

In 7 Am.Jur., Banks, Section 425, p. 299, it is said:

"Bank accounts may be established in the name of two or more persons. One of the important questions which arises in such cases is as to the ownership of the funds. It is obvious that the depositors may own the funds in common. Upon the death of one, his estate succeeds to his interest in the account."

Since we are not able to ascertain, in the condition of the record, the interest of either party in this account, we have concluded to remand the case so that the ownership of this fund may be determined.

The appellee answered the appeal, praying that Mrs. Mina Sanders be adjudged an intermeddler and condemned to pay damages in the sum of $3500. This appeal was set for argument on October 15, 1952, and the answer to the appeal was filed on that day. It was therefore filed too late for our consideration under Article 890 of the Code of Practice.

For the reasons assigned, the judgment, insofar as it recognized the plaintiff William C. Sanders and the defendants Edgar C. Sanders, Donald E. Sanders, Thomas J. Sanders, and Mrs. Ruth Sanders Campbell as the owners of Lot No. 24 and the east one-half of Lot No. 22 in Block No. 22 in the Town of Kentwood, Parish of Tangipahoa, State of Louisiana, and insofar as it condemned the defendant Mrs. Mina C. Sanders to pay the sum of $1398.-19, is reversed. It is now ordered that the demands of the plaintiff for the cancellation and annulling of the deed executed to Mrs. Mina C. Sanders by Miss Emily Sanders be hereby rejected. It is further ordered that the case be remanded to the lower court for determination of the ownership of the funds deposited in the joint bank account. Costs of this appeal are to be paid by the plaintiff-appellee.

PONDER, J., takes no part.