HARDY, Judge.
Plaintiff instituted this suit, praying for the rescission and cancellation of a mineral deed which he had executed in favor of the defendant. From a judgment in favor of plaintiff the defendant has appealed.
As the basis for his action of rescission plaintiff alleged that he had been induced to execute the conveyance of minerals by misrepresentation and fraud on the part of defendant and that the purported conveyance was executed without the knowledge, intention or consent of plaintiff.
The issue presented by this appeal is purely factual, there being no question of law involved.
Plaintiff is the owner of a forty-acre tract of land located in Ouachita Parish, described as being the Southwest Quarter of Southeast Quarter of Section 14, Township 17 North, Range 1 East, which he acquired by deed of date September 9, 1946, in which instrument of conveyance all mineral rights in and to the property described were reserved by plaintiff’s vendors.
After nightfall, on May 4, 1955, the defendant, J. H. Henry, called at plaintiff’s home on the described property for the purpose of negotiating for the purchase of oil, gas and mineral rights in the said tract. After some discussion, which took place out in the field where plaintiff had been engaged in plowing operations, the parties entered the house where defendant filled out two separate documents, one being a standard printed form of an oil and gas lease and the other a mineral deed form, conveying one-half of the minerals in the forty-acre tract of land',’both of which documents were signed by plaintiff. The originals were retained by defendant, who paid plaintiff $400 in cash, and copies were retained in the possession of plaintiff. Present at the time of the execution of these documents, in addition to the parties involved, were plaintiff’s wife and several of his minor children and grandchildren. After leaving the Glover place, the defendant, Henry, procured' the signature of a young negro employee, one Fred Cassey, as an attesting witness to Glover’s signature on the original documents. Early the next morning Henry, accompanied by Fred Cassey, drove back to Glover’s home for the purpose, as he testified, of having Glover acknowledge in Cassey’s presence that he had signed the instruments. Both Henry and Cassey testified that Glover made such acknowledgment. At some time following this incident the signature of another alleged witness was affixed to the original documents and the acknowledgment of Cassey as a subscribing witness was duly notarized by one J. E. Phillips, a Justice of the Peace of the vicinity, on date of May 10, 1955. Admittedly, these formalities were highly irregular, but, in view of the fact that the plaintiff, Glover, has freely admitted his signature on the documents 'in question, the irregularities in connection with the confection of the instruments are immaterial.
*560 The principal factual issue involved is in irreconcilable conflict by reason of the opposed testimony of the parties litigant.
We proceed to outline the positions of the parties, which were supported by their testimony on trial.
Plaintiff contends and testifies that he had no intention of making a sale of any mineral interests in his property; that his negotiation was restricted to the sale of a lease for an agreed consideration of $400 cash; that he did not understand that he had signed a deed to a part of the minerals; that some two weeks later he was first informed of the fact that he had signed a mineral deed by a salesman and collector, whom he identified only by the name of O’Neal, who came by his place to collect the payment on a stove; that after investigation he called upon defendant for cancellation of the mineral deed, which was refused.
Directly to the contrary is the effect of the contention and testimony of defendant who asserts that his negotiation with plaintiff was directed toward procuring both a lease and a deed to one-half of the minerals. Defendant testified that he made careful explanation to the plaintiff at the time of their meeting on May 4th that, since plaintiff’s reversionary interest in the minerals would not become effective until September 9, 1956, and then only in the absence of development, he was, in reality, offering to pay $400 for rights and interests that the plaintiff did not then own. Although defendant admits that he did not read the documents to the plaintiff before signing, he insists that he explained their nature and that plaintiff was well aware of the purpose and effect thereof.
In view of this conflict it is necessary to examine the testimony of the other witnesses and give serious consideration to the surrounding circumstances in the effort to arrive at a justified conclusion.
Plaintiff produced his wife, his two minor children and a thirteen-year old granddaughter, all of whom testified they were present at the time plaintiff signed the documents. Examination of the testimony of these witnesses discloses little of value in connection with the determination of this issue. First, it is to be observed that the testimony clearly indicated that none of these witnesses were familiar with the distinction between a lease and a sale of minerals and their individual descriptions of the incidents in connection with the signing are completely unconvincing. One significant fact, which we culled from the testimony of these corroborating witnesses, is found in their unanimous contradiction of a material point of the testimony of plaintiff. Plaintiff testified positively that, after defendant’s departure from his home, his oldest daughter read the copies of the two instruments which he had signed to him, in full. This was squarely contradicted by the testimony of the other witnesses, each of whom swore, categorically, that the instruments were not read. As we have above observed, we think this point is most significant. If plaintiff’s testimony is correct and the documents were read to him, then the conclusion is inescapable that he knew within a very brief period of time after his execution of the documents that he had signed not only a mineral lease but a mineral deed. If plaintiff’s testimony on this point was false, which conclusion is clearly indicated by the testimony of his other witnesses, then he has clearly perjured himself in this respect.
We confess that we are puzzled by several other apparently inexplicable developments. We do not quite understand the exact nature of the conversation between plaintiff and O’Neal. If this was, in truth, as plaintiff testified, his first knowledge of the execution of a mineral deed, it would seem to be a substantially important factual circumstance. We are completely at a loss to understand why O’Neal would be in possession of copies of the documents which plaintiff testified were exhibited to him during their conversation. *561 Under the circumstances we think O’Neal was a material witness and by availing himself of the testimony of this witness plaintiff could have made clear that which is vague and uncertain. We think plaintiff’s failure to tender this witness, or to explain his inability to produce him, should be construed most strongly against him.
Turning to a consideration of defendant’s position, we think his explanation is reasonable and entitled to acceptance. At the time of the confection of these negotiations plaintiff’s rights in and to the minerals were purely speculative and were contingent upon the passage of a sixteen-month period of time without the beginning of any development or exploration of the land with respect to the minerals therein. In the terminology of the industry, defendant was negotiating for a “top lease” on plaintiff’s tract of land and it is entirely understandable that he was unwilling to make a reasonably substantial cash outlay unless he could additionally procure an interest in the minerals which would become vested in him upon the expiration of the prescriptive period in the absence of development.
Plaintiff’s action is predicated upon allegations of fraud, misrepresentation, etc., and it is appropriate to emphasize the firmly imbedded principle that fraud is never presumed and must be established not merely by a preponderance of the evidence but by exceptionally strong proof. This fundamental rule has recently been emphasized by our Supreme Court in Sanders v. Sanders, 222 La. 233, 62 So.2d 284, and Buxton v. McKendrick, 223 La. 62, 64 So.2d 844. In the first cited case the opinion of the court made the following emphatic pronouncement [222 La. 233, 62 So.2d 286] :
“In the jurisprudence of this court it has been said that the charge of fraud is a most serious one; that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced. (Authorities) It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence. * *
In the instant case we are not only of the opinion that the nature, character and degree of proof, as above defined, is completely lacking, but, indeed, we are convinced that plaintiff has failed to prove his contentions even by a mere preponderance of the evidence.
For the reasons assigned the judgment appealed from is annulled, avoided, set aside and reversed, and there is now judgment in favor of defendant, J. H. Henry, rejecting plaintiff’s demands, at his cost.