CIACCIO, Judge.
On May 4,1981, plaintiff, Sedak T. Kedel, secured a judgment against defendant, Ab-dual Rammash, in the amount of $23,-571.47,[1] with legal interest from September 26, 1979.
On May 14, 1981 the defendant Abdual Rammash, contracted with the defendant, Ismail Haggi, for a loan of $5,000, for which he gave a second mortgage on his 1979 B.M.W. automobile as security for the debt. Plaintiff filed suit to annul the contract and mortgage as being in fraud of his rights as a judgment creditor.
After a trial on the merits, the district court rendered judgment in favor of the *425 plaintiff against the defendants, Rammash and Haggi, annulling and setting aside the contract and mortgage of May 14, 1981. The defendants filed this suspensive appeal.
The sole issue presented on appeal is whether the trial court erred in finding that the defendants contracted in an effort to defraud plaintiff. Appellant contends that the plaintiff failed to prove that the mortgage at issue was entered into for the purpose of perpetrating a fraud upon him.
The charge of fraud is a most serious one, thus the one who alleges it has the burden of establishing it by legal and convincing evidence. Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La., 1979); Marcello v. Bussiere, 284 So.2d 892 (La., 1973); Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (La., 1952). Fraud is never presumed and must be established by exceptionally strong proof. Hall v. Arkansas-Louisiana Gas Co., supra; Sanders v. Sanders, supra. Fraud must therefore be proven by evidence which is stronger than a mere preponderance and a showing that fraud is probable or that the circumstances partake of a suspicious character is not sufficient. Sanders v. Sanders, supra.
This Court is obliged to uphold the trial court’s findings of fact, in the absence of manifest error, when there is reasonable evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding. Arceneaux v. Dominque, 365 So.2d 1330 (La., 1979); Canter v. Koehrlng, 283 So.2d 716 (La., 1973).
Our review of the record convinces us that the plaintiff successfully proved his case and the trial court did not err in finding that the contract and mortgage entered into by the defendants were simulations and in fraud of the plaintiff’s rights as a judgment creditor.
The contract of loan and chattel mortgage were executed by the defendants some eleven (11) days after the plaintiff secured a money judgment against the defendant, Abdul Rammash. The amount which was loaned was equivalent to the remaining amount of equity in the seized vehicle. The defendant, Ismail Haggi, a personal friend of Mr. Rammash since their high school days in Libya, resided in Portland, Oregon at the time of the execution of the loan documents and at the trial of this matter. Although Mr. Haggi travelled to New Orleans specifically to make the subject loan and execute the documents on May 15,1981, he did not appear to defend “his interest” at the trial of this matter. Since Ismail Haggi was under subpoena and had peculiar knowledge of material facts pertinent to the resolution of this litigation, his failure to appear, especially when given three separate opportunities to do so by the trial court, would clearly give rise to the presumption that his testimony would be unfavorable. See: Marion v. N.O.P.S.I., 306 So.2d 758 (La.App., 4th Cir.1974) writ den. 310 So.2d 843 (La.1975). Ismail Haggi was scheduled to arrive at 8 a.m. from Beaver-ton, Oregon on the morning of trial, January 4, 1982, but he failed to appear. The Court, at the conclusion of this day of trial, agreed to accommodate Mr. Haggi by being available at 1:30 p.m. each day remaining in that week in order that Mr. Haggi could testify. Mr. Haggi did not appear. The trial was resumed on January 6, 1982 and the Court was informed that because of snow, Mr. Haggi would not be present. The Court agreed to hold the matter open for Mr. Haggi’s testimony but he never appeared to testify.
Furthermore, although Abdul Rammash disclaims any intent to defraud the plaintiff his actions do not support his position.
Defendant, Abdul Rammash, is a twenty-five year old college student from Libya. He received $500-$600 per month from his government to attend a local private university and the last such allotment was received in October or November, 1979. He attests to the fact that he, like the co-defendant, Ismail Haggi, are supported by money sent to them by their parents. Mr. Rammash testified that in the last two years his parents have sent him between $40,000 to $50,000. He stated that he bought his BMW automobile, new, in 1979 *426 for $13,000. He also stated that he put $8,000 down and a first mortgage was given to the National American Bank.
Mr. Rammash testified that the money he borrowed from Mr. Haggi was needed to pay attorney fees and living expenses. Yet upon further questioning he stated that he used $1,300 to pay someone to whom he owed money. Although Mr. Rammash received the loan proceeds on May 15, 1980 in Tom Schaefer’s law office, he did not pay Mr. Schaefer’s office for his pending criminal defense until thirteen days later when he returned with a two thousand dollar payment.
Defendant Rammash stated that the loan proceeds were comprised of a personal check for $1,300 which Mr. Rammash paid to a creditor and a Whitney Bank cashier’s check for $3,700. Mr. Rammash testified that Mr. Schaefer instructed Mr. Haggi to secure the cashier’s check from the bank downstairs from his office. Thus, they secured a cashier’s check made payable to Mr. Haggi and endorsed by him to Mr. Ram-mash. Mr. Rammash cashed the check with Mr. Haggi present; However, Mr. Schaefer denied instructing the defendants to secure a cashier’s check and testified that the checks were already drawn up when the defendants first appeared in his office on May 15, 1980 for the loan closing.
Mr. Rammash produced his savings books and checking records in order to prove that he was in need of money and this was the reason for the loan. However, he never produced the May, 1980 checking statement, being the month the loan was entered even though the trial judge specifically instructed him to produce this record by a request to his bank. Furthermore, the savings records show an unexplained $11,000 withdrawal contemporaneous with the time of the litigation between plaintiff and defendant, Abdul Rammash. Shortly thereafter, the defendant abandoned his banking practices and chose to deal in cash. Although Mr. Rammash claimed that his cash dealings were made necessary because the bank had frozen his checking account due to the May 4, 1980 judgment, his own records disclosed checking transactions that took place in June, 1980.
Appellant urges that the evidence in this case does not meet the test of being stronger than a mere preponderance but only shows circumstances of a suspicious character. We disagree.
The totality of the evidence viewed in connection with the presumption arising out of the unexplained failure of the mortgage creditor to testify on his own behalf satisfies us that the trial court did not err in finding that the plaintiff had proven his case and that the contract and mortgage were a simulation.
For the reasons assigned the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. The judgment was subject to a credit of $2800 with legal interest from January 31, 1979; and a credit of $8,000 which was being held on deposit with the court and which was ordered to be turned over to the plaintiff.