COLE, Judge.
This is an action to establish the filiation of two minors. The question presented is whether or not the filiation of both minors has been established at trial by clear and convincing evidence as required by La.Civ. Code art. 209 B.
This action was instituted on February 25, 1983, by petition seeking damages resulting from the death of Mr. MacArthur Davis, naming The Charter Oil Company of Jacksonville, Florida, Charles A. Lamont and The Insurance Company of North America as defendants. Initially, suit was filed by the brothers and sisters of the deceased alleging the deceased was never married and had neither adopted nor fathered any children. Thereafter, on May 12, 1983, Sarah Williams filed suit as natural tutrix of her minor children Latisha and Shalonda Williams alleging the minors were the natural children of the deceased and therefore entitled to damages resulting from his demise. On motion of the defendants these suits were consolidated by court order on June 13, 1983.[1]
The defendants filed a peremptory exception raising the objection of no right of action to the suit filed on behalf of the minor children.[2] The exception alleged the minors were not the children of the deceased. Further, the exception alleged they failed to institute a proceeding to prove filiation within one year of the death of the alleged parent and were therefore precluded from such an action by La.Civ. Code art. 209 B.[3] After a hearing on the exception, the trial court found “... the evidence is overwhelming that both Latisha Williams and Shalonda Williams are the surviving children and sole heirs of McAr-thur Davis; that they are the proper and only parties to maintain an action of wrongful death of their said father.” An appeal from this ruling of the trial court was taken by the brothers and sisters of the deceased. As well, the defendants filed an answer to the appeal alternatively seeking the judgment of the trial court be modified so as to recognize only Latisha Williams as the sole surviving heir of MacArthur Davis.
DISCUSSION
La.Civ.Code art. 209, as it appeared prior to amendment by Acts 1984, No. 810 § 1, provided:
*645 “Art. 209. Proof of filiation
A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in the Article.
C. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child’s birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
D. The right to bring this proceeding is heritable.”[4] (Underscoring ours.)
Construing art. 209 the court in Succession of Bartie, 472 So.2d 578, 582 (La.1985) stated,
“The burden of proof where a plaintiff must prove his case by ‘clear and convincing’ evidence is an intermediate one which requires that the fact be proven to a degree greater than that involved in proof by a ‘preponderance’ of the evidence but to a degree less than involved in proof ‘beyond a reasonable doubt.’ In other words, the existence of the disputed fact must be highly probable, that is, much more probable than its non-existence. Succession of Lyons, 452 So.2d 1161 (La.1984); LSB v. Edwins, 329 So.2d 437 (La.1976); Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1952); See also: McCormick on Evidence, Section 340(B) (2d Ed.1972). In this case the evidence overwhelmingly supports the finding that the plaintiffs are the illegitimate children of Henry Bartie.”
Similarly, the trial court found “the evidence is overwhelming” that the minors were the illegitimate children of MacArthur Davis. This is a factual finding which shall not be disturbed on review unless it is determined to be manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The examination by this court for manifest error must give great weight to the factual conclusions of the trial court. Where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed, even though this court may deem other inferences and evaluations are as reasonable. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Extensive testimony and stipulations of testimony were elicited at trial. Even though the trial court did not specifically detail which facts supported its conclusions, we note the record is sufficient to support the judgment, particularly as regards the younger daughter, Latisha.
MacArthur Davis acknowledged, in writing, both children as his daughters.[5] On March 20, 1980, a document entitled AC-KNOWLEDGEMENT OF PATERNITY was executed by MacArthur Davis to Latisha Williams before two witnesses, Sarah Williams, the child’s mother, and Debbie Kropog, an eligibility worker with the Tan-gipahoa Parish Office of Family Security. The document states in pertinent part, “I, MacArthur Davis, declare and acknowledge that I am the father of the child Latisha Williams born 11/28/78, place of birth Hammond, (Tang.) La. whose mother is *646 Sarah Williams.” MacArthur Davis’ signature appears after this statement.
On November 24, 1980, MacArthur Davis made the following written statement to the Department of Health and Human Services, Social Security Administration; “I have always acknowledged Latisha R. Williams, dob 11/28/78, and Shalonda C. Williams, dob 07/22/77, as my children. Both Sarah Williams, their mother, and I were free to marry when they were conceived and born. I have always acknowledged them/they have always lived with me since birth.” MacArthur Davis’ signature appears after this statement.
Sarah Williams is the mother of the two children. She testified she started living with MacArthur Davis about September of 1976, continuing this arrangement until his death and maintained no other intimate relations since she began living with MacArthur.[6] She stated her relationship with a Mr. Lee Cooper, Jr. had ended many months before July of 1976 when she gave birth to Laquanta, Lee Cooper’s child. Sarah testified MacArthur and her mother, Rosa, were present at the birth of both children. Further, she stated MacArthur bought necessities for the children and spoke of the children as his own to other persons. It was established the children were receiving social security benefits on account of MacArthur’s death. There is no doubt in Sarah’s mind MacArthur is the father of the children.[7]
Rosa Williams, Sarah Williams’ mother and the children’s grandmother, testified MacArthur was present at the birth of both children and had been living with Sarah continuously from 1976. Also, she stated MacArthur acknowledged the two children in her presence.
Lee Cooper, Jr. is the father of Sarah Williams’ third and fourth children, Terry and Laquanta, (Shalonda and Latisha are Sarah’s fifth and sixth children). He testified MacArthur lived with Sarah during 1977 and 1978 because he would attempt to visit his children and MacArthur was always there. Further, he stated he had broken off all intimate relations with Sarah prior to the birth of Laquanta in July of 1976.
Rosalie Taylor was the supervisor of Sarah Williams at the Hammond State School where both Sarah and MacArthur were employed from 1976 to 1979. Ms. Taylor testified:
“Q Now do you have any knowledge of who the father is of Sarah Williams’ two youngest children that is Shalonda Williams and Latisha Williams?
A Yes.
Q And who is that?
A McArthur Davis.
Q And how did you know that?
A Well I knew when Mac and Sarah both were working at the state school *647 and I know that they were staying together and I knew when Sarah was pregnant for those two kids. And he constantly said well you know several times those are my kids, Shalonda and the baby. From his own mouth he said it.
Q Did he say that on more than one occasion?
A Yes.
Q And that was with reference to both of those two children?
A Yes.
Q Now do you know when it was that he and Sarah started living together?
A Roughly 1976, 1977 it’s been a while back now.
Q And at the time the two children were born you indicated that they were you knew they were living together at that time?
A Yes, they were staying together.”
In addition, a stipulation was entered by opposing counsel providing an additional twelve witnesses would testify substantially in accordance with the testimony of Rosalie Taylor and Rosa Williams concerning the relationship between MacArthur Davis and Sarah Williams and his acknowledgment verbally of the two children.
The Reverend Johnny Smith, formerly married to Katherine Davis Smith, sister of the deceased, testified on direct examination as follows:
“Q In 1976, 1977 or 1978, did you have any conversations did you ever have any conversations with him during that period of time over any girlfriends that he might have had or whether or not he had any children?
A I had talked with him about after he went to work at the Hammond State School when he had got in contact with this lady Miss Sarah and he was going to see her off and on at that time. And I asked him why wasn’t he going to get married. He say that he wasn’t concerned about marrying. He said that this lady have some children. I don’t know how many. I said well you started you a family, I said you got you a family. He said yes he said but I don’t have no mind of getting married. He said I am helping her out.
Q Did he ever acknowledge or say that any of her children was his children to you?
A He never did. He used to bring them by the house sometimes with him just visiting.
Q When was this, sir?
A That was back in—
Q 1978 or 1979?
A 1978 he would come by the house with them sometimes a while and sit around and then go on back.
Q Were his clothes and things still at your house at that time, sir?
A The biggest of them were.
Q Were you and Mrs. Smith receiving any mail or was Mr. Davis receiving any mail at your address checks or anything like that in 1977,1978, as best as you can recall?
A Not at that time.
Q Is it possible that his payroll checks or disability checks might have started coming to your address for him during that period?
A Never did not at that time.
Q You don’t recall any?
A I don’t recall any at that time.”
In addition, the obituary of MacArthur Davis published by his family was introduced as evidence. The obituary stated in pertinent part: “He leaves to mourn his passing, Latisha and Shalonda of Hammond, La.; ... and very close friend Sarah Williams.... ”
Since the foregoing evidence provides a reasonable factual basis for the trial court’s conclusion notwithstanding the stricter burden of proof, the conclusion will not be disturbed. See Thomas v. Smith, 463 So.2d 971 (La.App. 3d Cir.1985). The judgment of the trial court is affirmed. The appellants, Leroy Davis, Katherine Davis Smith, James Davis, Geraldine Davis Charles, Jessie Mae Davis and Percy Davis are assessed with one-half the costs of this appeal and the Charter Oil Company, *648 Charles A. Lamont and the Insurance Company of North America are assessed with the remaining one-half of the costs of this appeal.
AFFIRMED.

. On December 19, 1983, the Charter Oil Company and Insurance Company of North America filed a third party demand naming the State of Louisiana, through the Department of Transportation and Development as third party defendants.

. In addition, a petition for declaratory judgment was filed on June 10, 1983, by Charter Oil Company, Charles A Lamont and Insurance Company of North America praying for judgment by the trial court determining and declaring the rights of the respective parties and dismissing the claims of those parties determined to have no right of action.
This petition in conjunction with the peremptory exception transformed the proceedings into a filiation action. See-La.Civ.Code art. 207.

.Such a contention is without merit. The accident which caused MacArthur’s death occurred on December 17, 1982. See Reed v. Missouri Pacific R.R., 446 So.2d 831 (La.App 2d Cir.1984).

. The 1984 amendment was in part made to enact the substance of the Reed decision.

. A spectre has been raised as to the mental capacity of MacArthur Davis. However, the testimony of several witnesses, particularly his supervisor, Rosalie Taylor, and the deposition of Dr. Richard H. Rolston establish MacArthur possessed sufficient mental capacity to enable him to informally acknowledge his daughters.

. It is suggested MacArthur Davis can not be the father of Shalonda because she was born on July 22, 1977. The testimony indicates Shalon-da was a full term baby and consequently conception must have occurred approximately nine months prior to her birth. This would infer conception took place about the fourth week in October of 1976. Because Sarah Williams testified she began dating MacArthur on or about November 4, 1976, it is suggested he can not be the father of Shalonda.
However, the correlation between conception and the inception of relations between Sarah and MacArthur strongly suggests MacArthur is the father of Shalonda. Predicting the exact time of conception and the length of gestation is speculative. It has been established Sarah and MacArthur began relations and subsequently eight to nine months later a child was born. This suggests MacArthur is the father of Shalon-da and not the contrary inference as raised by a party.

. It is true Sarah Williams indicated Lee Cooper was the father of Shalonda on a benefits application. However, such a statement by Sarah does not establish MacArthur is not the father of Shalonda. First, Lee Cooper stated he had no relations with Sarah for months prior to October of 1976. Second, because Sarah falsified her application to obtain more funds for her six children, it does not follow that Shalonda can not establish her filiation to MacArthur. Third, although this seriously weighs on the credibility of Sarah it does not affect the credibility to be given all the other "clear and convincing” evidence presented. Last, Sarah admitted that she made the false statement and subsequently made the unequivocal statement MacArthur Davis is the father of Shalonda.