ODOM, J.
 

 Plaintiff sued defendant for $5,409.49, alleged to be due him in accordance with the stipulations of a letter written by defendant to plaintiff, dated September 30, 1922, and a supplemental agreement entered into in December, 1924.
 

 It seems that when the case was first called for trial, the trial judge, on learning that there was a subsequent oral agreement between the parties which was not set out in detail in the original petition, suggested that plaintiff amend his original petition by setting out what the subsequent agreement was and that he demand an accounting setting out 'precisely, item by item, the amounts which he claimed. This was done. Defendant, in answer, denied that he owed plaintiff anything, setting up certain defenses which we shall state later. The case was tried, and there was judgment for plaintiff in the sum of $2,-489.74. Defendant appealed.
 

 Plaintiff moved to amend the judgment‘by increasing the amount to that originally demanded.
 

 The facts are not seriously disputed. Plaintiff and defendant for a considerable length of time were associated as eoemployees of the Mexican Petroleum Corporation of Louisiana. Defendant finally resigned and engaged in business for himself, and after he established his own business, Church, the plaintiff, also left his former employer and became associated with Winship, the defendant, not as a partner 'but as an employee on salary.
 

 Up until the fall of 1922 Winship’s business was prosperous, but in September of that year he found himself in need of capital or collateral in order to finance a deal out of which he expected. to realize handsome returns. Church had at the time checks amounting to $1,089.72, $400 in cash, one Liberty bond worth $100, and 20 shares of stock in the Pan-American Petroleum & Transport Company valued at $1,080, or total assets of $3,269.72.
 

 Winship needed a letter of credit which apparently he could not get without collateral and arranged with Church to use the above assets under an agreement set out in a letter, which is in words and figures as follows:
 

 “September 29, 1922.
 

 “Mr. W. J. Church,
 

 “New Orleans, La.
 

 “Dear Sir:
 

 “I have received from you, securities and cash listed below, which I have deposited with the Hibernia Bank and Trust Company as security for a Letter of Credit to cover purchases of oil in Mexico:
 

 “$1,089.72 in Checks
 

 “$400.00 in Cash
 

 “$100.00 in Second Liberty Loan Bonds, with November 15, 1922 and subsequent coupons attached
 

 “20 shares Pan American Petroleum & Transport Common, endorsed in blank.
 

 “I understand that you are willing to loan the above to me' for a period of, .up to 18 months. If I ineorpiorate my business, you are to receive preferred stock in equivalent amount to the value of the securities at the
 
 *819
 
 time the stock Is issued and I am to give you a bonus of 50% of common stock in the company. If the business is not incorporated, you are to receive back the cash and securities and I am to pay you an equivalent of the common stock, say $1,600.00.
 

 “This obligation is to be binding upon me personally, and/or my estate.
 

 “If at any time you desire to have the above Ean-American Stock sold for your account, I will have this done and the amount obtained for these securities is to be left me under the same conditions as above.
 

 “Very truly yours,”
 

 It will be noted that Winship acknowledges that he received the cash and securities listed and had deposited them with the bank as security for a letter of credit to cover purchases of oil in Mexico, and that he had received them as a temporary loan.
 

 Winshipi intended at that time to incorporate his business, in which event Church was to take preferred stock in an amount equal to tlhe value of the securities and common stock equal to one:half thereof, or say $1,600. If the business was not incorporated, Church was to receive back his cash and securities, plus a bonus of $1,600.
 

 The business was not incorporated, and in the latter part of December, 1924, the eighteen months’ period for which Winship had secured the use of Church’s assets having expired, the matter of settlement came up. At that time Winship still had the cash and securities, which he wanted to keep in his business. Church says, and his testimony is not disputed by Winship, that it was agreed that Winship might retain the cash and securities on condition that he (Church) should participate in the profits of the business in the proportion which his cash and securities, plus the $1,600 bonus which he claimed at the end of 1924, bore to the amount of capital invested by Winship. This arrangement continued until some time in 1927. In the meantime, Church worked for Winship on ^ salary and had been at various times given bonuses on salary as was the custom with all employees for faithful services rendered. The business yielded some profits which Church claimed tho right to share. He had been permitted to take out of the business from 1924 to the end of 1927, the sum of $1,705.23, and had also been permitted to withdraw his Liberty bond and the stocks he had put up .valued at $1,-780; the total withdrawals amounting to $3,485.43.
 

 A statement marked “P. 3,” filed in evidence by plaintiff, shows that defendant was due plaintiff $3,269.72 for cash and securities originally advanced, $1,600 bonus as per letter, a Christmas bonus on salary at one time $300 (this is shown on defendant’s books), $50 profit on some oil stock sold (explanation unsatisfactory, but apparently not denied by defendant), his pro rata of profits made in 1925, amounting to $328.45, and profits made in 1927, amounting to $202, or a total of $5,-975.17. Subtracting from this
 
 amount
 
 $3,4S5.-43, the total amount withdrawn by Church, leaves a balance of $2,489.74 due him. This is the amount the trial judge found to be due him, and we think it is correct.
 

 Defendant’s serious complaint is, first, that the $1,600 claimed by plaintiff as a bonus under the letter dated September 29, 1922, is in the nature of interest charged by plaintiff for the loan of the cash and securities, and as such is usurious, amounting to 32.6 per
 
 *821
 
 cent, per annum. He cites article 2924 of the Civil Code, which provides that the rate of conventional interest cannot exceed 8 per cent, and the Succession of Rhoton, 34 La. Ann. 893, holding that the penalty for charging usurious interest is the forfeiture of all interest..
 

 We are not impressed with defendant’s contention. Defendant needed assets belonging, to plaintiff. He agreed that if plaintiff would, lot him use them for eighteen months, he would pay a bonus or premium of $1,600. The word “bonus” as here used means a consideration for what is received, an advantage or. benefit given in return for the benefit received, or an inducement for conferring a benefit. Dor the benefit which defendant hoped to realize from the use of plaintiff’s property, he agreed to give in return $1,600. There is nothing unlawful in a transaction of that kind.
 

 In Robinson Lbr. Co. v. Tracka
 
 &
 
 Boudreau, 173 La. 461,137 So. 853, 854, plaintiff sued defendant on a note for $2,000. The defense was that the note sued on was given for a short extension of another note for $5,200, and that the $2,000 note was void; the consideration being for usurious interest. Mr. Justice Land, speaking for the court, said:
 

 “It is well settled, as contended by relator, that a note given as a mere bonus for the extension of time of payment of the original note or obligation cannot be recovered by the lender, when in excess of the conventional rate of interest; that such bonus is excessive and usurious, and is not considered a legal cbnsideration,” citing Chadwick v. Menard, 104 La. 38, 28 So. 933, and Huntington v. Westerfield, 119 La. 615, 44 So. 317.
 

 But it was found that in reality the note sued on was given in order that the makers might secure an extension of time for removal of timber from lands, and that being the real consideration of the note, the holder was allowed to recover. The transaction involved in the instant case was not a loan of money or property for interest, but one where the recipient of certain property to be used as collateral agreed to pay a certain consideration for the benefit of so using it. Parties may, for a lawful cause, bind themselves as they see fit, and as they bind themselves, so must they remain bound.
 

 Defendant’s second contention is that-plaintiff’s right to share the profits of the business necessarily carries with it an obligation to share the losses, and an effort was made to show that the business had become involved in debt.
 

 That would be true if the agreement in December, 1924, had been one in the nature of a partnership, and we find that it was not such. As a consideration for leaving his assets in defendant’s hands, plaintiff was promised a certain pro rata share of the profits. Defendant does not seem to have regarded his arrangement with plaintiff as a partnership affair. The books kept by him showed that it was his business and he referred to it as “my business” while on the stand. He made out no income tax report for a partnership. Counsel refers to the fact that plaintiff withdrew $664.56 at one time, which was $354.03 more than he claimed to be due as his percentage of the profits which they say indicates that there was a partnership.
 

 We find that plaintiff was allowed to take out of the business $3,485.43, including the Liberty bond and the 20 shares of stock, which indicates we think that there was no partnership. It would seem, we think, that if
 
 *823
 
 there had been a partnership, defendant would hare objected to plaintiff’s withdrawing what capital he had in the concern; but there was no objection. According to defendant’s present contention, he permitted plaintiff to remain a partner in the business notwithstanding. he had withdrawn practically all he put into it. That does not seem reasonable to us. Under the facts disclosed, we think there was no partnership.
 

 Por the reasons assigned, the judgment appealed from is affirmed, with all costs.
 

 ST. PAUL, J., takes no part.