PONDER, Justice.
 

 In this case the lower court gave the plaintiff, Mente & Co., Inc., judgment against the Roane Sugars, Inc., the defendant, for the sum of $6,500 and interest and rejected the plaintiff’s demands for process taxes and carrying charges. The defendants have appealed. The plaintiff has answered the appeal and asks that the judgment be amended so as to allow the plaintiff to recover for the process taxes and the carrying charges. The matter has been submitted for our determination.
 

 The trial judge in his written reasons for judgment has correctly stated the issues involved in this cause as well as the pertinent facts relating thereto and has properly determined this controversy.' We adopt the written reasons of the trial judge as ours in disposing of this cause, viz.:
 

 
 *346
 
 “This is a suit.for the enforcement of a ■ contract alleged to have been entered into between plaintiff and the defendant on July 13, 1933, involving the sale by the former to the latter, of fifty thousand stripe towling bags and sewing machine thread sufficient for the said number of bags.
 

 “The contract was signed and executed by J. R. Roane, president of defendant corporation. It provided for shipping instructions to be furnished by the buyer to the seller and the shipping -dates were fixed for the months of October, November and December 1933, at the buyer’s option. In connection with the provision regarding shipment, the contract, on its reverse side, contained the following clauses:
 

 “ ‘Failing to receive timely shipping instructions or prompt payment, Seller may add to price interest at highest conventional rate and carrying charges of 4% per annum from time goods should have been delivered; and at its option, may ship approximately equal quantities monthly or, then or thereafter, (a) may declare this order cancelled either in whole or in part, without waiving any rights against Buyer, or (b) without segregating and/or appropriating and/or manufacturing and/or tendering the goods and/or putting Buyer in default, may invoice entire undelivered balance and recover full purchase price therefor with interest -at highest conventional rate from time goods should have been delivered, and may withhold delivery until full payment plus carrying charges of 4% per annum from time goods should have been delivered * * */
 

 “The contract contained the additional clause:
 

 “ ‘Any new or increased tax or duty levied on goods such as are hereby sold, or on handling thereof, whether resulting from any change in the present classification thereof or .otherwise, shall be added to above prices.’
 

 “The contract price of the bags was one hundred and thirty ($130.00) dollars per thousand and the required sewing machine thread was priced at twenty-seven and one-half (27%(í) cents per pound, making a total of six thousand five hundred ($6,500) dollars for the bags and twenty ■ seven dollars and fifty ($27.50) cents for one hundred pounds of twine. The contract likewise provided for carrying charges of one-half (%%) per cent per month to be added to the total price beginning October 1, 1933.
 

 “Plaintiff alleges that in spite of repeated demands and numerous requests made by it for shipping instruction, both verbal and in writing, defendant, without right, breached the contract' by failing to furnish such instructions or taking the goods contracted for, and that, accordingly on March 24, 1934, availing itself of one of its rights under the clause just quoted, forwarded to defendant an invoice covering the goods amounting .to seven thousand four hundred thirty nine and 42/100 ($7,-439.42) dollars, a copy of which has been offered in evidence attached to plaintiff’s
 
 *347
 
 petition. In said letter it requested payment of the invoice, less attorney’s fees, and that upon compliance therewith the goods as contracted for would be immediately shipped. Plaintiff now seeks the recovery of the entire amount set out in said invoice as above stated together with interest at the rate of eight (8%) per cent per annum beginning January 1, 1934, plus fifteen (15%) per cent as attorney’s fees on said amount of principal and interest, with the privilege of withholding delivery until full payment in accordance with the contractual obligations.
 

 “Defendant filed an exception of no cause of action. The basis of this exception is that the contract sued upon has not the required mutuality of obligations indispensable as a legal requirement and which renders the contract null and void. This exception was heard, argued and submitted and overruled. Though defendant’s counsel re-urges the correctness of the exception levelled, no additional legal- or convincing argument has been submitted to warrant a change in the Court’s former r.uling.
 

 “For answer, defendant admitted the execution of the contract as sued upon; it admitted plaintiff’s allegations of demands and requests made by the latter for shipping instructions as pleaded; it further answered, asserting that plaintiff was suing for specific performance without having alleged performance on its own part by actual manufacturing of 'the bags; and that no recovery could be had other than in damages for non-performance. Defendant further pleads fraud and misrepresentation in that plaintiff’s agent failed to inform defendant’s president that there were any conditions and terms on the reverse side of the contract, and that defendant had no knowledge of such facts; and that had it known there were such terms and conditions the contract would not have been entered into. Defendant further pleads against the right of plaintiff to recover the processing tax levied by Federal Authorities under the N. I. R. A., since declared unconstitutional, and fifteen (15%) per cent attorney’s fees, the latter on the ground that said sums have not been paid or expended by plaintiff.
 

 “Defendant prays that its exception of no cause of action be sustained and plaintiff's suit dismissed, and in the alternative, that plaintiff be directed to re-draft its petition in such a manner as to allege in the alternative the amount of damages actually suffered, this within such time as the Court may fix, and on failure so to do
 
 that plaintiff be non-suited.
 

 “The petition shows an exchange of letters between plaintiff and defendant- beginning July 14, 1933, and ending March 24, 1934, the tenor of Which defendant admits in its answer. The letter of date July 14, 1933, shows a confirmation of the contract sued upon. That of July 28, 1933, is a notice to defendant that under
 
 the
 
 Agricultural Adjustment Act, 7 U.S.C.A. § 601' et seq., new taxes would be levied resulting from the provisions of the 'National Industrial Recovery Act, 48 Stat. 195, and the requirements of the Federal Government thereunder, and that accordingly, such additional taxes would have to be added to
 
 *348
 
 the prices named in the contract. On September 21, 1933, defendant acknowledged plaintiff’s notice and requested information as to what additional prices would be thereto added, and to which plaintiff replied on September 22nd, 1933, informing defendant that the additional price would be $18.15 per thousand, being a processing tax levied under the authority aforestated. On September 25, 1933, defendant notified plaintiff that it would accept the bags so contracted for only upon the original contract price, and to which, under date of September 26, 1933, plaintiff wrote defendant explaining that these taxes were mandatory by action of the Federal Government and were to be assumed by the Buyer under the terms of the contract. It likewise requested that shipping instructions be given, as the contract called for delivery in October, November, and December. On October 13, 1933, plaintiff again requested shipping instructions under said contract. On October 14, 1933, defendant notified plaintiff that it would start its manufacturing operations at a later date, and requested that the dates for delivery of the bags be delayed and that it, defendant, would inform plaintiff when delivery should be made., It likewise therein requested that plaintiff contact its agent, LeBourgeois Brokerage Company, and obtain from them instructions for the marking of the bags. On October 16, 1933, plaintiff acknowledged defendant’s letter and forwarded a copy thereof to the latter’s agent. On October 20, 1933, plaintiff received a letter from LeBourgeois Brokerage Company, Inc., informing it that it was sending a sample as to the exact coloring and marking desired on the shipment to be furnished defendant, and in which plaintiff replied on the date of October 23, 1933, by forwarding a sketch thereof. Under date of November 14, 1933, plaintiff again called upon defendant for shipping instructions, and again making‘a similar request on December 7, 1933. Under date of December 9, 1933, defendant acknowledged plaintiff’s communication advising the latter that it was its intention of sending shipping instructions as soon as the need would arise during the course of their manufacturing operations. Under date of January 8, 1934, plaintiff again requested shipping instructions so that shipments could be made without delay, with a letter of similar import under date of January 13, 1934, and other letters of date January 18th and 30th; February 8th and 20th, 1934, and in which latter instance plaintiff notified defendant that the enforcement of the contract would be placed in the hands of their attorney within six days unless satisfactory disposition was made. Then follows a letter under date of February 27, 1934, by plaintiff’s attorneys, asking for -a compliance with the contract by defendant in which, under date of March 5, 1934, defendant replied to the effect that, at the time of execution of the contract, it had no knowledge of the terms and conditions set out on the reverse side thereof, and that due to the fact that their manufacturing operations had ended they would not be able to accept any shipment under the terms of the said contract; to which plaintiff caused its attorneys, under date of March 24, 1934, to write defendant of the express terms and conditions of the
 
 *349
 
 contract entered into, and, in accordance therewith, enclosed an invoice covering all goods and merchandise amounting to the price sued for, demanding that unless payment would be made by April 2, 1934, suit would be instituted on said contract. It is admitted that correspondence between plaintiff’s and defendant’s attorneys was thereafter exchanged without satisfaction, resulting in this suit being filed on August 24, 1934.
 

 “It is clear that the contention of defendant of its ignorance of the terms and conditions of the contract as a means of evading its obligations can not be seriously urged. On examining the contract, we find, printed in heavy black typed, letters just above the signature of defendant, the following words ‘accepted subject to the terms and conditions on the reverse hereof’. These conditions and terms are the ones it now seeks to evade. They are part and parcel of the contract, forming the whole thereof, and are to be interpreted and enforced with respect to that which appears on the face of the contract thus arriving at what the contracting parties actually intended and did accomplish. The law presumes that parties understand the import of their contracts and that they intend that which its terms and conditions manifest. It is axiomatic that parties ^should be held to the terms of the contract which they accept; they may contract as they please, provided the cause of the contract is lawful, not contrary to public policy or not forbidden by law, moral conduct or public order. American Cotton Association v. New Orleans Packet Co., Inc., 180 La. 836, 157 So. 733. South Port Corporation v. P. Olivier & Sons, 179 La. 233, 153 So. 825. Arts. 1895, 1901, R.C.C.
 

 “Reviewing the correspondence had between the contracting parties from the inception of the contract to its abrogation by defendant, we find plaintiff pursuing a course of conduct entirely commensurate with the terms and conditions of the contract. It sought at various and sundry times to have defendant comply with its obligations by furnishing shipping instructions as it had bound itself to do and always evidencing a readiness to comply with its reciprocal obligations by a delivery of the goods as called for by the contract. On the other hand, we find defendant always acquiescing in the demands of plaintiff for shipping instructions save on one occasion wherein a complaint was made relative to . the processing tax. Following this complaint, we find defendant asking for a delay for shipment of goods due to its manufacturing operations. We find defendant leading plaintiff to believe up until March 1934, that it would comply with its obligations' towards furnishing shipping instructions and receipt of the goods so contracted for. It was only in March 1934, this after defendant had ceased its sugar manufacturing operations, that we find it endeavoring to avoid its obligations on the ground of its cessation of activities that if it would need any bags during its future operations for the coming harvesting sugar-cane years of 1934 and 1935, it would favor plaintiff with the order. It was then that plaintiff, after due notice to defendant, placed the matter in the hands of its attorneys for proper le
 
 *350
 
 gal action, and which was instituted in due course.
 

 “It is likewise clear that plaintiff’s demand is squarely in .line with the rights and privileges granted it by the terms and conditions of the contract entered into. It can not be charged with having exercised unreasonable delay in endeavoring to have defendant comply with its obligations arising therefrom, nor with unreasonable delay in seeking to have its rights enforced in law. The maxim that “agreements legally entered into have the effect of laws on those who have formed them” is clearly applicable in this instance. Church v. Winship, 175 La. 816, 144 So. 585.
 

 “The defense of fraud and misrepresentation is without merit. Defendant did not offer a single witness in support of this defense, the only witnesses heard being that submitted on behalf of plaintiff. It is likewise well accepted that he who alleged fraud and misrepresentation bears the burden of establishing such a fact.
 

 “The case of Mente & Co., Inc., v. Judice Co., Inc., 159 La. 183, 105 So. 283, has no application to the case at bar. In that case the exception of no cause of action was sustained, and plaintiff’s suit dismissed on the ground that the contract sued on did not oblige defendant to furnish shipping instructions, but obliged the ■ plaintiff to ship the bags to the defendant, * * *, by delivering them to the transportation company and receiving bills of lading. The Court held that plaintiff should have shipped the bags during the life of the contract, and then claim the price, and not endeavor to collect the price as a condition precedent to delivery. The contract in the ease at bar is quite different in its terms and provisions than the contract in the Judice case, supra.
 

 “The contention of plaintiff that it is entitled to recover the processing tax imposed by the Federal Government must be denied. Plaintiff concedes that the bags ordered by defendant have never been manufactured, a right to so refrain from doing, it enjoyed under the terms and conditions of the contract.
 

 “It is shown that this processing tax was paid by plaintiff on all fabric which it ordered prior to being manufactured into bags. This tax was paid by plaintiff and included in its bill of lading on all goods received from the manufacturer of the fabric. It is likewise shown, and well known, that the tax levied under the N. I. R. A. has been declared unconstitutional and therefore ineffective.
 

 “It is likewise shown, that plaintiff ordered sufficient fabric to meet not only its present but future orders, taking advantage of market conditions. Plaintiff, since the date of the unconstitutionality of the tax, undoubtedly, has not paid any processing tax which it now seeks to impose on defendant. Plaintiff has not offered any evidence to the effect that the goods which were to be manufactured into bags for the defendant and on which it is asserted a processing tax was levied, that such merchandise had been segregated and set apart for the use and benefit of defendant.
 
 *351
 
 Unquestionably, since several years have elapsed from the date of the declaration of unconstitutionality, and the non-requirement of plaintiff to meet any such tax, such goods, as upon which a tax has been paid, has unquestionably been manufactured into bags which have long since been disposed of by plaintiff in its regular trade channels. Hence, upon the payment by defendant of its contractual price, plaintiff must manufacture and deliver the bags originally contracted for and unquestionably manufacture out of goods upon which no processing tax has been paid or is due. Were it shown to the Court that the bags contracted for had been or were to be manufactured out of goods upon which plaintiff has paid the Federal tax, then defendant, under its contractual obligations, would be bound for such additional cost. But the record is barren of such proof.
 

 “Plaintiff has not, in its prayer, which is controlling of the relief, sought to impose the carrying charges called for by the contract. Irrespective of that fact, such carrying charges undoubtedly, contemplates charges levied against goods which have been manufactured and stored due to the failure of the Buyer to demand delivery, or until delivery is actually made. Carrying charges of such a nature can not, and should not, in law and equity, be due on goods being carried on shelves in a raw state, and imposed upon a Buyer. A merchant may carry an excess quantity of merchandise in storage for future use in supplying orders from all customers in the channels of regular trade, there being no proof of a segregation of said goods, to satisfy the contract sued upon. In that respect, the demand of plaintiff is denied.
 

 “I shall likewise deny the attorneys’ fees of fifteen (15%) per cent for there is no proof of the actual expenditure of that amount by plaintiff. The contract calls for the right of recovery of such attorneys’ fees as are actually expended. The mere conditional agreement between plaintiff and its attorney that the latter shall be entitled to that amount if recovery should be had is not an expended amount by plaintiff. Plaintiff did not bind itself to pay that amount irrespective of the outcome of the litigation, nor did it actually expend said amount as the contract provides for.
 

 “The .interest charges of eight (8%) per cent being the highest conventional rate of interest allowed by law, and as called for by the contract, must be recognized as being enforceable.
 

 “Accordingly, let there be judgment in favor of plaintiff and against the defendant for the sum of six' thousand five hundred ($6,500) dollars together with interest thereon at the rate of eight (8%) per cent per annum from January 1, 1934, until paid, and all costs of suit to be taxed. All other demands of plaintiff are hereby denied.
 

 “It is further ordered that defendant shall have and enjoy the right to demand of plaintiff the delivery of the merchandise so contracted for, such delivery to be
 
 *352
 
 made within reasonable times and under the terms and conditions of said contract.
 

 “Officially at New Iberia, Louisiana, this 9th day of December, 1940.
 

 “(Signed) James D. Simon
 

 “Judge 16th Judicial District Court”
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.
 

 O’NIELL, C. J., does not take part.
 

 HIGGINS and FOURNET, JJ., dissent.