ELLIS, Judge.
This suit was originally filed by plaintiff Sam Fedele to compel Mrs. Eloise B. St. Romain to transfer to him her undivided one half interest in certain property. He alleged in his petition that he had agreed to buy the property from Bard J. White and that John B. St. Romain, husband of Eloise B. St. Romain, acted as Notary Public in passing the act of sale. He further alleged that when the parties met to pass the act of sale, Mr. St. Romain told him that it was necessary to insert Mrs. St. Romain’s name into the sale as a purchaser in order to secure financing for the sale, but that this was being done merely as a convenience and that she was to acquire no interest in the property. He alleged that he had made all payments on the property and paid for the expenses of the sale, and that Mrs. St. Romain had given no consideration whatsoever. He stated that the name was placed in the deed to defraud him of his property, and prayed that she be ordered to execute to him a deed of her interest in the property.
Mrs. St. Romain answered, alleging that she was a bona fide purchaser of an undivided one half interest, that Mr. Fedele was fully aware of that fact at the time of the sale, and reconvened for damages for the false accusations made against her.
In his answer to the reconventional demand, plaintiff alleged that he had no knowledge that Mrs. St. Romain’s name was in the deed as a purchaser at the time the sale was passed, and that he was not so informed by Mr. St. Romain, a contradiction of his original petition.
Exceptions of non joinder of an indispensable party were filed by Mrs. St. Ro-main, and in response thereto Mr. St. Ro-main was joined as a party defendant. After exceptions of no cause of action were filed by both defendants, the plaintiff again amended his petition, and alleged that, when the sale was passed, it was not read to him, his wife or the witnesses, and that the parties and witnesses were called into a room one by one to sign the deed and the note. He further alleged that he was not informed, and did not know, that Mrs. St. Romain’s name was inserted in the deed, and did not find out about it until six months later. He alleged that her name was put in the deed by Mr. St. Ro- *914 main with the intent to defraud him of his property, without his knowledge or consent and without any consideration. He prayed to be decreed sole owner of the property, and to have Mrs. St. Romain’s name stricken from the deed.
He filed a fourth amended petition, specially pleading want of consideration on the part of Mrs. St. Romain, as an alternative contention, and prayed that the defendants be ordered to execute a deed to him for their one half interest in the property.
Mr. St. Romain’s answer in effect alleges that plaintiff had full knowledge of the terms and contents of the deed.
As might be anticipated, the testimony of the witnesses is in hopeless conflict. The following facts are not in dispute, however. Mr. Fedele was operating a restaurant on premises leased by him from Bard J. White, who agreed to sell the property to Mr. Fedele for $8,000.00. Mr. Fedele did not have the money, and went to his lawyer, Mr. St. Romain, for assistance in obtaining a loan. Mr. St. Romain approached his cousin, Fulton A. Gremillion, who, after looking at the property and talking to Mr. and Mrs. Fedele, agreed to make the loan. The act, in the form of a credit sale, was passed in the kitchen of Mr. Fedele’s restaurant on July 6, 1965, and Mr. Fedele and Mrs. St. Romain appear therein as joint purchasers. Virtually every other relevant fact is in dispute.
Relative to the negotitions leading up to the transaction, Mr. Fedele testified that he asked Mr. St. Romain’s help in obtaining the loan, and Mr. St. Romain got Mr. Gremillion, who, after looking at the property and discussing the restaurant operation with Mr. and Mrs. Fedele, agreed to lend them the money.
Mr. St. Romain testified that Mr. Fedele wanted him to buy the property and continue the lease agreement. He did not think this would be a good deal, since Mr. Fedele would then be able to abandon the restaurant at any time, and he felt that it would be safer if each of them had a half interest. Since payments on the loan were about the same as the rental on the restaurant, Mr. Fedele was to make the payments out of the profits of the business and pay no rent to Mr. St. Romain. He approached Mr. Gremillion with the proposition, and, after looking at the property and satisfying himself that the business could indeed made the payments, Mr. Gremillion agreed to make the loan.
Mr. Gremillion testified that Mr. St. Ro-main said that he and Mr. Fedele were buying the property together, and that the payments would be made out of the profits of the cafe. He further testified that when he talked to Mr. and Mrs. Fedele, they confirmed this and explained to him how the payments could be made. He further testified that he was making the loan to the St. Romains, and would not have made it if they had not been parties thereto.
Mrs. Fulton A. Gremillion testified that Mrs. Fedele said, in her presence, when her husband was discussing the loan, that the St. Romains were “going in with them.”
Mrs. Fedele denied that anything was ever said about the St. Romains having anything to do with the deal.
On the evening the sale was executed, those present were Mr. and Mrs. Fedele, Mr. and Mrs. St. Romain, Mr. and Mrs. Gremillion, and Mr. White.
Mr. White’s testimony was that he did not hear the deed read, that he could not recall the order in which the various parties signed the deed. He testified that the deed was signed in the kitchen, and that those signing would step up to the table, sign and- step back. He saw all of the parties and witnesses sign, and, after the signing was completed, he received his check.
Mr. Fedele testified that the deed was neither read nor explained, and that the parties were called into the kitchen one by one to sign. He said that Mr. White *915 signed first, and he signed next. When he signed the deed, only Mr. White’s signature appeared thereon, he said, and no typing of any kind appeared on the area where he signed. He said that he signed and endorsed the note at the same time, and no other signature appeared thereon. The same was true of his endorsement of the check. He said the next person to sign was his wife, who was a witness, and then Mrs. St. Romain. Mr. Gremillion, who also witnessed the deed, was the last to sign, he said.
Mrs. Fedele testified that when she signed the deed, Mr. White’s and Mr. Fed-ele’s signatures were on the deed, but no names were typed thereon. She further stated that Mrs. St. Romain did not sign until after she did. She was confronted with her deposition, taken almost two years before the trial, in which she had testified that she was the last to sign, and that Mrs. St. Romain’s signature was already on the deed when she did so. She explained that she was probably confused when she testified to that effect in her deposition.
Mr. St. Romain, Mrs. St. Romain, and Mr. Gremillion all testified that the deed was not read, but was explained to those present by Mr. St. Romain, and that all parties were in the kitchen at the time. They testified that the names of the parties were typed under the signature lines at the time. They further stated that Mr. White signed first, Mrs. St. Romain second, Mr. Fedele third, and the witnesses, Mrs. Fedele and Mr. Gremillion, last.
Mr. Gremillion testified that he stood by the table and saw all parties execute the note and mortgage. After that, he produced his check, saw it endorsed to Mr. White by Mrs. St. Romain and Mr. Fedele, in that order, and then exchanged it for the note, which had been in his bank box ever since.
During argument before this court, it was noted that copies had been substituted for the original note and mortgage in the record. Counsel stipulated that the originals be brought for inspection by the judges of this court. When they were produced, a cursory examination thereof revealed that Mr, Fedele’s signature on the mortgage was placed thereon after Mrs. St. Romain’s name was typed in. Mr. Fedele’s signature on the note overlapped Mrs. St. Romain’s and was clearly placed thereon after she had signed it.
The district court found that there was no intent to defraud on the part of the defendants, and that Mrs. St. Romain’s signature on the note was a sufficient consideration to support her acquisition of an undivided one half interest in the property. He dismissed plaintiff’s suit, and, since no evidence was offered in support thereof, Mrs. St. Romain’s reconventional demand. Plaintiff has appealed.
Plaintiff has alleged fraud in this case, and bears the burden of proving it. In Sanders v. Sanders, 222 La. 233, 62 So.2d 284 (1952), the Supreme Court said:
“In the jurisprudence of this court it has been said that the charge of fraud is a most serious one; that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced. Strauss v. Insurance Co. of North America, 157 La. 661, 662, 102 So. 861; Garnier v. Aetna Ins. Co. of Hartford, Conn., 181 La. 426, 159 So. 705; Mutual Life Ins. Co. of New York v. Rachal, 184 La. 430, 166 So. 129; Metcalf v. Monsour, 195 La. 570, 197 So. 235; Mente & Co., Inc. v. Roane Sugars, Inc., 199 La. 686, 6 So.2d 731; American Guaranty Co. v. Sunset Realty & Planting Co., Inc., 208 La. 772, 23 So.2d 409. It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence. Angichiodo v. Cerami, D.C., 35 F.Supp. 359; *916 Fort v. Metayer 10 Mart. (O.S.) 436; Charrotte v. Louisiana College, 1 La. App. 438; Woodward v. Barringer, La.App., 24 So.2d 200.”
In addition to the facts hereinabove set forth, plaintiff also relies on the following circumstances to support his position. After the sale was passed, he made all payments on the note, and paid the taxes on the property. He also testified that he paid for the abstract on the property and paid for drawing and passing the act of sale. Defendants admit that plaintiff has made all the payments on the note, and paid the taxes, but aver that, under their agreement, it was his obligation to do so. Mr. St. Romain testified that he received no fee for his work in the matter, but that Mr. Fedele did pay all of the out of pocket expenses.
Considering all of the foregoing, we conclude that plaintiff has fallen far short of carrying the burden of proof required of him by the law. In addition to the contradictory allegations of his various petitions, his testimony and that of his wife relative to the order and manner of the execution of the deed and note has been demonstrated to be false by examination of the documents themselves. On the other hand, the testimony of the defendants and their witnesses is entirely consistent with their allegations.
Since we accept the defendants’ version of the transaction, we find no merit to the claim of want or lack of consideration. Mrs. St. Romain’s solidary liability on the note and foregoing of rent in lieu of his share of the payments on the note are full consideration for her undivided one half interest in the property. We are further convinced because of Mr. Fedele’s admitted financial difficulties and Mr. Gremillion’s testimony that he would not have made the loan to Mr. Fedele alone.
The judgment appealed from is affirmed, at plaintiff’s cost.
Affirmed.