330 So.2d 341 (1976)
Cortez Burns ARMOUR, Plaintiff-Defendant-in-Reconvention-Appellee,
v.
SHONGALOO LODGE NO. 352, FREE AND ACCEPTED MASONS, Defendant-Plaintiff-in-Reconvention-Appellant.
No. 12859.
Court of Appeal of Louisiana, Second Circuit.
March 15, 1976.
Rehearing Denied April 19, 1976.[*]
Writ Granted June 15, 1976.
*342 Leon M. Pliner, Shreveport, for defendant-plaintiff-in-reconvention-appellant.
Kitchens, Benton & Kitchens by John B. Benton, Jr., Minden, for plaintiff-defendant-in-reconvention-appellee.
Before PRICE, HALL and SMITH, JJ.
En Banc. Rehearing Denied April 19, 1976.[*]
HALL, Judge.
Shongaloo Lodge No. 352, Free and Accepted Masons, defendant and plaintiff-in-reconvention, appeals from a judgment in favor of Cortez Burns Armour, plaintiff and defendant-in-reconvention, declaring null and void a lease contract entered into by plaintiff's father, Andrew Clark Burns, and the Masonic Lodge in 1950 for a term of 99 years, covering the second story of a two-story frame building owned by Burns in the Town of Shongaloo, Webster Parish, Louisiana, for use by the Lodge as a meeting place. For reasons expressed in this opinion we affirm the judgment of the district court.
Plaintiff as sole heir of her father and mother and as present owner of the property filed suit against the Masonic Lodge seeking to have the lease contract declared *343 null and void because of lack of a serious consideration and because the lease contains no fixed and determinate price. The Lodge answered the suit asserting that the obligations of the Lodge contained in the lease contract, with which it has fully complied, constituted legal cause or consideration for the contract. Alternatively, the Lodge asserted the validity of the contract as an onerous donation inter vivos. By reconventional demand the Lodge sought specific performance of the lessor's obligations contained in the contract relative to maintenance and repair of the first story of the building.
In well considered written reasons for judgment, the district court held the lease contract was not supported by a serious consideration and was invalid and unenforceable. Defendant's reconventional demand was rejected.
The contract in question, in authentic form, is described in its preamble as a "contract of lease." The contract recites that Andrew Clark Burns is the owner of a lot of ground in Shongaloo, located at the northeast corner of the intersection of Highway 70 and Highway 66, on which he is constructing the bottom or first story of a frame building suitable for the placing of a second story by the Masonic Lodge to be used exclusively and solely for a meeting place for the said Masonic Lodge. The agreement provides that the Lodge is to have the exclusive use and control of the upper or second story of the said building, "and the same is hereby leased and rented to them for a period of NINETY NINE (99) YEARS from the date of this contract." The contract recites that Burns and his heirs and assigns shall have the sole and exclusive use and control of the lower or first story of the building to use as they see fit. It is provided that as further consideration of "this lease" the Lodge, in addition to building the upper or second part, agrees to pay the taxes on the second story as same may be equitably apportioned and also to keep same in repair and to keep the roof on the building free from leaks, and also to make such repairs to the second story as may be necessary to keep it in suitable use as a Lodge room for use and control of the said Masonic Lodge. Burns bound himself to keep the foundation of the building in good and substantial repair and condition and to keep the posts, walls and studding of the ground or first story of the building in such condition that they will at all times substantially support the said upper or second story. It was agreed that in the event the building was destroyed by fire or an act of God that the lease would terminate and become null and void.
The evidence discloses that prior to 1950 the Lodge occupied the second story of a similar building known as the Roseberry Building in Shongaloo. Due to a highway construction project the Roseberry Building had to be torn down and the Masonic Lodge was paid $1,500 for its agreement to move from those premises. Burns, an active and devoted Mason who had been Worshipful Master of the Lodge for several terms, desired to provide a meeting place for the Lodge in Shongaloo to assure the continuation of Masonic activities in that area, and perhaps to provide a memorial to himself and his Masonic endeavors. The "contract of lease" was entered into between Burns and the Lodge. Burns constructed the lower story and the Masons, using their money they received from the Roseberry Building, their own labor, and materials gathered and purchased by them, constructed the upper story.
Since completion of the building the Masonic Lodge has occupied and used the upper story as a meeting place, maintaining the upper story in excellent condition and making repairs and improvements from time to time. During the years they kept the roof free from leaks, put on a new roof in 1973, installed a modern kitchen, modern bathrooms, and central heating and air conditioning.
Burns operated a grocery store in the lower story until 1953 when he leased it *344 to a Mr. Matthews, who operated a grocery story and filling station in the lower story until Matthews' death in 1974. Burns died in 1955. Matthews paid $25 per month rent during the time he occupied the first story of the building.
The evidence discloses that the ground floor and its supporting components have not been maintained and are in a bad state of repair. It would cost in excess of $18,500 to put the ground floor in good condition. The construction expert who testified about the cost of repairs was of the opinion it would not be economically feasible to make such repairs to this old frame building.
In holding the lease invalid for want of serious consideration, the district court relied heavily on Northeast Louisiana Detachment of Marine Corps League v. City of Monroe, 253 So.2d 107 (La.App.2d Cir. 1971), writ refused, 260 La. 18, 254 So.2d 619. The Marine Corps League case is closely in point. In that case the City of Monroe leased to the Marine Corps League a tract of land for a term of 99 years. The consideration stipulated in the lease was an initial payment of $1 by the lessee, an obligation to build a building of undetermined value for the lessee's use, and an assumption of liability for all claims arising out of the lessee's own use of the premises. The Marine Corps League actually erected a building at a cost of $8,000. This Court held the lease to be invalid and unenforceable under general principles of Louisiana law dealing with leases and obligations and also under the constitutional prohibition against loaning or granting public property for private purposes. This Court found there was no advantage to the lessor-City by reason of the lessee's construction and maintenance of a building for its own exclusive use. The applicable legal principles were discussed as follows:
"A lease is a synallagmatic contract by which one party gives to the other the enjoyment of a thing `at a fixed price.' LSA Civil Code Article 2669. Three elements are essential to a valid leasethe thing, the Price and the consent. LSA Civil Code Article 2670. Article 2671 provides that the price should be certain and determinate' and Article 2674 requires a `certain stipulated price.' Article 2464 sets forth the essential elements of the price of a sale and requires that the price must be `certain', `fixed and determined' and, most significantly, `serious' and `not to be out of all proportion with the value of the thing.' The civil law doctrine embodied in Article 2464 applies to all other contracts as well as to sales. Blanchard v. Haber, 166 La. 1014, 118 So. 117 (1928)."
The principles applied in the Marine Corps League case are applicable to the instant case. The obligations of the Masonic Lodge under the lease contract are of no significant, substantial or serious economic or pecuniary benefit or advantage to the lessor. The agreement by the lessee to construct and keep in good repair the second story of the building for its own exclusive use and control for a term of 99 years, long beyond the economic life of of the building, is of no benefit to the owner of the property. The agreement to pay such taxes as may be apportioned to the upper story is of no consequence, particularly in view of the fact that no taxes have actually been assessed against the upper story or paid by the Masonic Lodge during the years. The obligation to keep the roof on the building free from leaks is of some small economic advantage to the lessor, but the evidence discloses that less than $300 has been expended by the Lodge in this respect over the 25 years since the lease contract was executed.
The agreement in this case actually contains no fixed, determined or certain "price", described as an "absolutely necessary" element of a lease in LSA-C.C. Art. 2670. The "price", if any at all, is not "serious" and is "out of all proportion with the value of the thing." This is particularly true when viewed in light of *345 the extremely long term of the lease (99 years) and in view of the onerous obligations upon the lessor to maintain the foundation, posts, walls and studding of the first story in good and substantial repair so that they will substantially support the second story. It is to be noted that the Lodge has had the use and enjoyment of the premises for more than 25 years at little or no economic benefit to the owner, and a continuation of the lease agreement will result in substantial economic expense and loss to the owner.
The principal thrust of defendant's argument is that the true "legal cause" or "motivating factor" for the granting of the lease, sufficient to support its validity, was the strong personal desire of Burns to assure the continuation of a meeting place for the Masonic Lodge and the Lodge's obligation to maintain the second story for suitable use as a Lodge meeting place, which it has done.
While such personal gratification may have been the motivating factor or true cause for the owner entering into the agreement, such does not constitute a certain, fixed, determined and serious price required by the Articles of the Civil Code as an essential element of a lease contract. Article 2671 provides that the price should be certain and determined, and should consist of money or a certain quantity of commodities or a portion of the fruits.
Defendant further contends that although no rental is stipulated in the lease the lease is valid as a "paid up" lease, the price being the value of the labor and materials supplied by the Lodge in constructing the second story of the building at the outset of the lease term. It may well be that an agreement by a lessee to construct a building or part of a building of a certain value on a lessor's property could, in an appropriate case where the lessor derives some benefit from the construction during or upon termination of the lease period, be considered a fixed, serious price. In this case, however, as previously discussed, the lessee was to have the exclusive use and control of that part of the building constructed by it for a period of 99 years, beyond the reasonable economic life of the building. The construction of the second story of the building was of no economic benefit to the owner and, therefore, was not a fixed, serious price.
Defendant also contends the contract is valid as a joint venture. The contract is specifically denominated and intended to be a lease and must stand or fall under the requirements of law with respect to leases. This contention is without merit.
Defendant further contends that even if the court cannot uphold the agreement as a lease, the court should look to the true intention of Burns and hold the agreement to be a valid onerous donation inter vivos. Defendants cite N of singer v. Hinchee, 199 So. 597 (La.App. 1st Cir. 1941) which upheld a conveyance of property as a valid donation where the act of conveyance was in the form of a sale and was in authentic form. It was established in that case that the recited consideration was not, in fact, paid and that the transferors intended to make a gratuitous transfer of title to honor their mother's wishes.
A lease is a synallagmatic contract whereby one party gives to another the enjoyment of a thing at a fixed price. By definition a lease is not a gratuitous contract. Like a sale, it requires a price. In Nofsinger and similar cases, it is not the sale which is declared valid, but the conveyance of ownership, which can be accomplished gratuitously by donation. A lease, with its reciprocal rights and obligations, cannot be created gratuitously. A price, fixed and serious, is an essential element, without which there is no lease.
Defendant's argument that the contract in this case is a donation leads to the question  a donation of what? Defendant suggests it is a donation of a usufruct or right of use or of habitation *346 under LSA-C.C. Arts. 533 et seq. or 626 et seq. An owner might grant a usufruct or right of use or habitation of property by donation. However, to hold in this case that the owner made a donation of a usufruct or right of use or habitation of the second story of the building would be to completely rewrite the purported contract and change substantially the rights and obligations of the parties. This the court cannot do. The clear intent of the contract is to create a lease, and, as stated above, the contract must stand or fall on the requirements of law related to leases. An essential requirement of lease being absent, the contract is null.
The holding that the lease is null, void and unenforceable necessarily requires the conclusion that the Lodge is not entitled to specific performance of the owner's obligations to keep the foundation, posts, etc. in good condition. The reconventional demand was properly rejected.
The right, if any, of defendant to remove the improvements placed by it on the premises or to recovery the value thereof has not been made an issue in this proceeding and we express no opinion in this regard.
Likewise, prescription has not been pleaded by defendant and is not an issue in this case. Compare Lee Lumber Co., Ltd. v. International Paper Co., 321 So.2d 42 (La.App. 3d Cir. 1975).
For the reasons assigned, the judgment of the trial court annulling and setting aside the agreement between Andrew Clark Burns and Shongaloo Lodge No. 352, Free and Accepted Masons is affirmed at appellant's costs.
Affirmed.
* * * * * *
SMITH, J., dissents and assigns written reasons.
SMITH, Judge (dissenting).
I agree with the majority opinion that a lease requires a "fixed price" to be a valid enforceable obligation. I also agree that a fixed price must be "certain and determinate" and "serious",[1] i. e., not out of all proportion with the value of the thing, and that the civil law doctrine embodied in Article 2464 of the Louisiana Civil Code applies to all other contracts as well as sales. Northeast Louisiana Detachment of Marine Corps League v. City of Monroe, 253 So.2d 107 (La.App. 2d Cir. 1971).
The majority errs in evaluating the obligations imposed on the lessee in light of the economic conditions of 1976. The lease was consummated in 1950. The nature of the "price" should be judged according to the economic conditions at the time the lease was signed.
The evidence reveals that by contract with Andrew Clark Burns, the Shongaloo Lodge No. 352 was granted a 99 year lease. Under the terms of the agreement, Andrew Clark Burns recited that he was constructing a 30 × 60 foot building and that it was suitable for having a second story. Under the agreement the Shongaloo Lodge was to place a second story on the building to be used exclusively for a meeting place for the Lodge.
The Lodge did expend more than $1,500, which it had received for its old Lodge, and other money to construct the second floor of the building. The labor for the building construction was donated. The Eastern Star Auxiliary raised money for the project by serving meals to the Lions Club and other projects. No record was kept as to what the total construction cost was.
The Lodge was obligated to maintain the second floor of the building and the roof and pay any taxes due on it. This obligation has been met to date. However, Mr.
*347 Burns, the lessor, died about 1953 and practically no repairs or maintenance work has been done since 1953 on the lower half of the building, although Burns agreed to maintain the foundation and first floor.
After Mr. Burns' death the lessees have been allowed to occupy the premises without protest from plaintiff for over 20 years.
In December of 1974, the present suit was filed by Mr. Burns' heir to annul the contract.
The $18,000 cost of repairs to the lower story of the building appears burdensome at this time. However, it is probable it would not have been so, had the lessors performed through the years. It is also true that the replacement cost of the second floor, $29,000 would not have been contemplated in 1950.
However, as counsel for the defense point out, the law is that parties may contract as they please, provided the cause is lawful, not contrary to public policy, or forbidden by law, moral conduct or public order, and they should be held to their contract, even though the contract is unreasonable. Mente & Co. v. Roane Sugars, Inc., 199 La. 686, 6 So. 2d 731 (1942); Leon v. Dupre, 144 So.2d 667, (La.App. 4th Cir. 1962).
This case is not one where there is a total lack of consideration as in Paige & Wells v. Scotts' Heirs, 12 La. 490 (1838); or no price as in University Publishing Co. v. Piffett, 34 La.Ann. 602 and McCain v. McCain Bros., 165 La. 884, 116 So. 221 (1928). If this contract is annulled the $29,000 second story belongs to plaintiff.
The principle of law on which this suit is founded can be analogized to the law on lesion.[2] Article 1870 of the Louisiana Civil Code provides that lesion is proven by establishing the value as of the date of the contract, and how much the price was less than the value as of the contract date.
There is no testimony as to the value of a 99 year lease in 1950, to attack the consideration given.
The majority decision results in the lessor receiving the benefit of an improvement to her property which has a replacement cost of over $29,000.
Whatever the construction cost and value of a 99 year lease was in 1950, the holding in this case appears contrary to the case of Mills v. Thomason, 211 So.2d 790 (La.App.2d Cir. 1968) where it was stated:
"Both parties to the lease contract have fully performed under its terms for more than 23 years. Such would render it too late for the appellee to repudiate her obligations under the lease contract."
More recently this court upheld a 99 year lease in the case of McCain v. Continental Can Co., Inc., 299 So.2d 454 (La.App. 2d Cir. 1974). In that case the sum of $25 per acre for the entire term of 99 years was paid together with the promise to pay taxes annually. This court pointed out that the lessor received benefits amounting to serious consideration, i.e.:
(1) immediate use of the rents (here immediate use of the Lodge's money and labor to improve his property);
(2) payment of taxes (same as to Lodge here on the property leased);
(3) retention of minerals; and
(4) prospective return of the improvement in good condition after 99 years.
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Marvin and Smith, JJ., dissented from denial to grant rehearing.
[1] LSA-C.C. Arts. 2669, 2670, 2671, 2674.
[2] LSA-C.C. Art. 1860.