liBYRNES, Judge
Ad-Med, Inc. and Internal Medicine Associates (“IMA”), a division of Bruce J. Iteld, M.D. (A professional Medical Corporation) (“Iteld”) entered into a contract. The contract contained an arbitration provision. A dispute arose under the contract.[1] Ad-Med lodged a demand for arbitration with the American Arbitration Association (“AAA”) alleging breach of contract. Ad-Med and Iteld each selected an arbitrator. Ad-Med selected Robert Garrity, Jr. Iteld selected Robert Harvey. The AAA selected K.W. Michael Chambers. The dispute was arbitrated. After hearing the case the arbitrators unanimously ruled in favor of Ad-Med and against Iteld. Iteld was ordered to pay $856,151.74 to Ad-Med, and Ad-Med and John Cassisa[2] were ordered to pay $23,-991.76 to Iteld.
Ad-Med moved to have the Civil District Court confirm the arbitration award pursuant to LSA-R.S. 9:4209. Prior to the confirmation, Iteld moved to have the award vacated pursuant to LSA-R.S. 9:4210 on the grounds that Iteld had discovered that Robert Garrity, Jr., the arbitrator appointed by Ad-Med, had an undisclosed, ongoing attorney-client relationship with John Cassisa, the president and sole shareholder of Ad-Med.
Iteld’s motion to vacate was fixed for December 16, 1997. Ad-Med’s confirmation hearing was held on November 21, 1997, and the trial court entered a judgment on November 24, 1997, confirming the arbitration-award.
Iteld’s grounds for vacating the arbitration award were not heard at the time of the confirmation hearing, but the judge indicated at that hearing that he would entertain those arguments at the time he heard Iteld’s motion to vacate which was fixed for December 16,1997.
^Should Robert Garrity be disqualified for evident partiality?
It is not necessary that we determine the full extent of the attorney-client relationship between Cassisa and Garrity, because, for the reasons explained hereafter, we find as a matter of law under the facts of this case that such an undisclosed conflict would not disqualify Garrity as a party-appointed arbitrator.
Iteld contends that the alleged undisclosed attorney-client relationship between Ad-Med and Cassisa constitutes “evident partiality” under LSA-R.S. 9:4210B which requires that:
“[T]he court ... shall issue an order vacating the award upon the application of any party to the arbitration.
* * * *
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them. [Emphasis added.]
Iteld contends that the phrase “or any of them” is broad enough to apply even to party-appointed, non-neutral or partisan arbitrators.[3]
The agreement between the parties provided that:
This Agreement shall constitute the law between the parties hereto, but in matters not specifically addressed, this Agreement and the rights of the parties hereunder shall be governed and interpreted in accordance with the laws of the State of Louisiana. [Emphasis added.]
But the “laws of the State of Louisiana” provide that a contract is the law between the parties (LSA-C.C. art.1983) unless prohibited by “laws enacted for the protection of the public interest” (LSA-C.C. art. 7) or public policy. Mente & Co. v. Roane Sugars, 199 La. 686, 6 So.2d 731 (1942). One may renounce what the law has established in one’s favor, when the renunciation does not affect the rights of others and is not contrary to the public good. Lowenberg, Marks & Co. v. H. & C. Newman, Limited, 142 La. 959, 77 So. 891 (1918); Broadwell v. Rodrigues, 18 La.Ann. 68 (1866).
The arbitration clause in the agreement between the parties provides that:
In the event that any dispute or disagreement arises relating to the interpretation or construction of any provision of this
*558 Agreement, or any other disagreement involving the operation of the Clinic, then such dispute or disagreement shall be conclusively settled by arbitration in accordance with the rules of the American Arbitration Association then in effect, and judgment on the award rendered may be entered by any court having jurisdiction, under the provisions of the Louisiana Arbitration Law. In any such arbitration there shall be three (3) arbitrators, the first selected by IMA, and second by AD-MED, and the third selected by the first two arbitrators. [Emphasis added.]
This arbitration clause in the contract between Iteld and Ad-Med requiring that the arbitration be in accordance with the rules of the American Arbitration Association is not contrary to a law enacted for the protection of the public interest. Nor is it contrary to public policy. Neither does the agreement between Ad-Med and Iteld to abide by the rules of the American Arbitration Association affect the rights of any third parties. Therefore, to the extent that the Rules of the American Arbitration Association regarding the partiality of arbitrators is inconsistent with LSA-R.S. 9:4210 B, the Rules of the American Arbitration Association should be treated as the law between the parties.
|4The Commercial Arbitration Rules of the American Arbitration Association provide in pertinent part that:
1. Agreement of Parties
The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) or under its Commercial Arbitration Rules....
12. Qualifications of an Arbitrator
Any neutral arbitrator appointed pursuant to Section 13, 14, 15, or 54, or selected by mutual choice of the parties or their appointees, shall be subject to disqualification for the reasons specified in Section 19. If the parties specifically so agree in writing, the arbitrator shall not be subject to disqualified for those reasons.
Unless the parties agree otherwise[4], an arbitrator selected unilaterally by one party is a party-appointed arbitrator and is not subject to disqualification pursuant to Section 19. [Emphasis added.] The term “arbitrator” in these rules refers to the arbitration panel, whether composed of one or more arbitrators and whether the arbitrators are neutral or party appointed.
19. Disclosure and Challenge Procedure
Any person appointed as neutral arbitrator shall disclose to the AAA any circumstance likely to affect impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others. Upon objection of a party to the continued service of a | ¿neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive. [Emphasis added.]
It is clear from these provisions that Mr. Garrity is a “party-appointed arbitrator”, not a “neutral arbitrator.” Under Section 12, Mr. Garrity, as a party-appointed arbitrator, is explicitly exempted from the disclosure and bias rules, “unless the parties agree otherwise.” [5]
Annexed to appellant’s brief is a copy of The Code of Professional Responsibility for Arbitrators of Labor Management Disputes of the National Academy of Arbitrators, American Arbitrator Association, Federal Mediation and Conciliation Service.[6] It fails to support the argument for which it is offered by the appellant. It provides in pertinent part that:
*559 It [this Code] does not apply to partisan representatives on tripartite boards. It does not apply to commercial arbitration or to other uses of arbitration outside the labor-management dispute area. [Emphasis added.]
Thus, by its very terms, this Code of Ethics offered by the appellant does not apply to Mr. Garrity as he is a “partisan representative” on a tripartite board.
Among the exhibits offered by the appellant in connection with the motion below to vacate the arbitration award, is a copy of a Code of Ethics for Arbitrators of Commercial Disputes. Included in the Preamble to this Code is the statement that:
|6While this Code is intended to provide ethical guidelines in many types of arbitration, it does not form part of the arbitration rules of the American Arbitration Association. ...
As noted earlier, the agreement between the parties says that the arbitration is to be governed by the rules of the American Arbitration Association. The Code of Ethics for Arbitrators of Commercial Disputes by its very terms just quoted does not form part of those rules. Therefore, it is not the contractually established law between the parties. Canon VII of this Code of Ethics refers to party appointed “non-neutral” arbitrators. Canon VIIE(l) states that “non-neutral arbitrators are permitted to be predisposed toward deciding in favor of the party who appointed them.” Canon VIIB(2) provides that non-neutral arbitrators do not have to withdraw if requested to do so for bias. The appellee contends that because the appellant could not have forced Garrity to resign even had they known of the alleged bias prior to the arbitration, appellant is not prejudiced by Garrity’s failure to make a timely disclosure. Appellant counters that it did sustain prejudice because Garrity’s appearance of impartiality fostered by his failure to disclose his alleged relationship to Cassisa may have unduly influenced the other arbitrators in their deliberations. Our reading of the Rules of the American Arbitration Association, the two codes of ethics offered by the Iteld, and the jurisprudence in this area, does not lead us to the same expectation of impartiality in party-appointed, non-neutral arbitrators as is contended for by Iteld:
It would be strange indeed if an interested party, with the right to select an arbitrator, would select one antagonistic to it. An arbitrator selected by one of the contesting parties, is effectually an advocate of such party. The third party mutually selected by them is expected to be the impartial and final judge.
Johnson v. Jahncke Service, Inc., 147 So.2d 247 (La.App. 4 Cir.1962).
|7We admit that we initially recoiled in alarm at the thought of the implications of Iteld’s allegations if proven to be true, but that was from the perspective of this bench where such a relationship between a judge of this Court and one of the litigants would be shocking. We must remember, that in this Court the litigants are not each given the privilege of selecting a panel member of their own choosing. We are certain that if the litigants were permitted to select judges of their own choosing when they come before this Court, there would not be the same expectation of impartiality as the litigants have a right to expect and demand of this Court as it is currently structured and operated.
It is not the province of this Court to question the Rules of the American Arbitration Association. Nor is it the province of this Court to question the contractual undertakings of parties invoking those rules, when neither those rules nor those contractual undertakings are contra bones mores or prejudicial to the rights of third parties.
The Motion to Confirm the Arbitration Award
The hearing on Ad-Med’s Motion to Confirm Arbitration Award was conducted on November 21, 1998. Iteld introduced no evidence substantiating its claim that the arbitration award should not be confirmed due to Mr. Garrity’s alleged bias.
On November 24, 1997, the trial court entered a judgment making the award of the arbitrators a judgment of the Court whereupon the arbitration award was arguably merged into the judgment of the trial court and the arbitration award ceased to exist *560 independently thereof. Therefore, Ad-Med contends that when the trial court heard Iteld’s motion to vacate on December 16, 1997, it no longer had the authority to do so as that award no longer existed independent of the judgment of November 24, 1997, confirming the arbitration award. Ad-Med contends that from the moment the judgment Rof November 24, 1997, was rendered and signed, Iteld’s only remedies were those prescribed by the Code of Civil Procedure relative to relief from judgments, e.g., motion for new trial or appeal. Ad-Med contends that Iteld no longer had any right to attack the arbitration award directly.
Iteld counters that the motion to vacate was timely under LSA-R.S. 9:4213. Moreover, Iteld notes that although Iteld’s motion to vacate was fixed for hearing on a date subsequent to Ad-Med’s motion to confirm, at the time the trial court fixed the date for the hearing on Iteld’s motion to vacate, Ad-Med’s motion to confirm had neither been heard nor acted upon.. Therefore, Iteld concludes that it was never contemplated by the trial court that the rendering of the judgment on Ad-Med’s motion to confirm would preclude Iteld from going forward with the motion to vacate.
Both parties raise excellent arguments concerning their respective positions on this complex and intriguing procedural issue. However, as we have already determined that there is no merit in Iteld’s complaint about Robert Garrity, the resolution of this thorny procedural question is not essential to the disposition of this case, and is better left to another day.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. The exact nature of the dispute is not relevant to the outcome of this appeal.

. John Cassisa was the president and sole shareholder of Ad-Med. He was added to the arbitration proceedings on the motion of Iteld.

. Allen v. A & W Contractors, Inc., 433 So.2d 839 (La.App. 3 Cir.1983), discusses "evident partiality” but is inapposite as there were no party-appointed non-neutral arbitrators in that case.

. In this case the parties did not "agree otherwise.” Therefore, Robert Garrity "is a party-appointed arbitrator” and is not subject to disqualification pursuant to Section 19.

. We suggest that the solution for the appellant in this case would have been to insert in the arbitration provision of the contract a clause making Section 19 applicable to the party-appointed arbitrators.

.Although the appellee has not formally objected to this attachment to the appellant brief, it is questionable whether it really forms part of the record. However, as we have found that it does not support the proposition for which it is offered by the appellant, the appellee is not prejudiced.